**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

GAIL ROSE                                                                                                        PLAINTIFF

v.                                             No. 4:04CV01043 JLH

THE INTERTECH GROUP, INC.;
POLYMER GROUP, INC.; and
CHICOPEE, INC.                                                                                          DEFENDANTS

**OPINION AND ORDER**

Gail Rose brought this action on dual grounds of racial discrimination and retaliation against the InterTech Group, Inc., Polymer Group, Inc., and Chicopee, Inc., pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964).  Rose has also brought a state-law tort claim of outrage.  The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as to the claims that arise under federal law.  The Court has authority under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the state-law claim.  Before the Court is the defendants' motion for summary judgment.  For the following reasons, that motion is granted.

**I.**

A court should enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

**II.**

From 1988 to 1995, Gail Rose, an African-American, worked for Johnson & Johnson or its subsidiary, Johnson & Johnson Personal Products Company, at the manufacturing facility at 1301 E. 8th Street, North Little Rock, Arkansas. Over the course of her employment, Rose's responsibilities included inspecting Handi-Wipes and packing them into packages as well as helping manufacture feminine hygiene pads. During this time, Rose never operated any of the manufacturing machinery at the plant.

In March 1995, the InterTech Group purchased two manufacturing lines at the North Little Rock plant. All other lines were shut down and transferred to another facility. As Rose did not work

on either of the purchased manufacturing lines, she lost her job at the North Little Rock facility when her production line was discontinued. Rose subsequently applied for employment with the new ownership group in September of 1995. When she was not hired, she filed an EEOC charge alleging that she was not hired because of her race and age. However, Rose chose not to pursue the charge, and it was dismissed.

In 1999, an expansion of the North Little Rock facility created new positions. Rose applied for employment for a second time with the new ownership. Once again, when Rose was not hired, she filed an EEOC charge, this time on the grounds of racial discrimination and in retaliation for the 1995 EEOC charge that she had filed. The EEOC dismissed the charge with a no cause determination, after which Rose filed suit in the United States District Court for the Eastern District of Arkansas. This suit was administratively terminated in June 2002 because of the bankruptcy of InterTech.

In the spring of 2004, InterTech's successors, the Polymer Group and Chicopee, accepted applications for the positions of slitter operator and material handler at the North Little Rock facility. Rose applied for these positions but was not hired. In June 2004, Rose again filed an EEOC charge alleging that she was the victim of race discrimination and retaliation for the prior EEOC charge in 2000. The EEOC again dismissed Rose's charge with a no cause determination. Rose then filed this suit.

According to the defendants, they declined to hire Rose in both 1999 and 2004 for three reasons. First, Amanda Grayson, the Human Resources Manager, received negative feedback from Rose's former coworkers about her previous work habits, including the following performance issues: tardiness, abuse of breaks, wandering from her post, conversing too much with coworkers,

and displaying a lazy attitude and general lack of drive. The other two reasons were Rose's lack of experience operating the particular equipment the defendants were hiring someone to operate and an assessment of Rose's leadership potential. According to Rose, she was at least as qualified as other new employees they hired to handle the equipment, and the reason she was not hired was because Grayson believed she was a "troublemaker" due to of her prior EEOC charges.

### III.

When a plaintiff lacks direct evidence of discrimination, then she "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). The Eighth Circuit has defined direct evidence as "'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" *Cronquist v. City of Minneapolis*, 237 F.3d 920, 925 (8th Cir. 2001) (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)). Alternatively, to carry the initial burden of establishing a *prima facie* case, the plaintiff must show

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnel Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. If Rose can meet each element of a *prima facie* case, the burden then shifts to the defendants to identify a legitimate, non-discriminatory reason for declining to hire Rose. *Id*. If the defendants meet this burden, Rose must then prove that the

articulated reason was a pretext.  *Id.* at 804, 93 S. Ct. at 1825.

Here, Rose has presented no direct evidence that her race may have been a motivating factor in the defendants' decision not to hire her in 2004.  Thus, the Court must assess her claim in light of the elements of a *prima facie* case as laid out by the *McDonnel Douglas* Court.  No one disputes the first element – that Rose belongs to a racial minority – or the third element – at least to the extent that her application was rejected.  The defendants contend, however, that Rose has failed to meet either of the remaining elements of her *prima facie* case.

While "the threshold of proof necessary to make a prima facie case is minimal," *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109-10 (8th Cir. 1998), Rose has offered no specific evidence regarding the qualifications of the positions for which she applied, *i.e.*, slitter operator and material handler.  Furthermore, while her resume and deposition offer some proof as to what her qualifications might be generally, they are not the least bit probative on how her experience qualifies her specifically for these jobs.  Instead, she merely states in her deposition that "[a]nything that Personal Products worked on – had in there – I was capable of working on," and if anything had changed in the plant since she last worked there in 1995, that would not matter "[f]or the simple fact that I'm a trainable person."  (Rose's Dep. at p. 153, lines 15-16; p. 155, lines 18-24.)  When Rose simply "makes conclusory assertions that she was qualified for the position[, t]his is insufficient to establish a prima facie case for discrimina[tion]."  *Rose-Maston*, 133 F.3d at 1110.

As for the fourth element – that after Rose was rejected, the position remained open and the employer continued to seek applicants with Rose's qualifications – Rose "bears the burden to proffer 'specific, tangible evidence' that [applicants] who were 'similarly situated in all respects' to [her] received different treatment from [the defendants]."  *Philip v. Ford Motor Co.*, 413 F.3d 766, 768

(8th Cir. 2005) (quoting *Rose-Maston*, 133 F.3d at 1109 n.4; *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003)).  On this point, Rose admits that she could offer no names of comparables who were treated more favorably in 2004.  The only affirmative evidence offered by Rose comes from the affidavit of Louis Parker, which states, "We were hiring people off the street with no experience." (Parker's Aff. at ¶ 7.)

Even if this proof were to establish a *prima facie* case on behalf of Rose, the defendants have presented three legitimate, non-discriminatory reasons for declining to hire Rose: (1) a recommendation against hiring Rose made by Rose's former coworkers, (2) Rose's lack of experience and training as an operator, and (3) an assessment of Rose's leadership potential.  The burden then shifts back to Rose to establish that these reasons were a pretext for discrimination. According to the Eighth Circuit, "Whereas plaintiffs need only make a minimal showing to establish the *prima facie* case, more substantial evidence of discrimination is required to prove pretext, because evidence of pretext is viewed in the light of [the defendants'] legitimate, non-discriminatory explanation."  *Jones v. United Parcel Service, Inc.*, 461 F.3d 982, 992 (8th Cir. 2006) (citation omitted).  The undisputed facts show that over half of those employed in the positions for which Rose applied in 2004 are African-American.  At the North Little Rock plant, the defendants currently employ 50 total slitter operators, 22 of whom are African-American, and 69 total material handlers, 38 of whom are African-American. (Grayson's Aff. at ¶ 16.)  Thus, out of 119 employees in these positions, 60 are African-American.  No reasonable jury could find that the defendants' proffered reasons for not hiring Rose were pretexts to cover racial discrimination.  *Cf. Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113 (8th Cir. 2005).  The defendants are therefore entitled to summary judgment on Rose's claim of discrimination.

**IV.**

Rose has also brought a claim for retaliation under 42 U.S.C. § 2000e. Absent direct evidence, the plaintiff "must make a prima facie case of unlawful retaliation by demonstrating that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *Wells v. SCI Mgmt., L.P.*, __ F.3d __, __, No. 06-1689, 2006 WL 3455092, at *5 (8th Cir. Dec. 1, 2006). As with the claim for racial discrimination, the burden-shifting analysis of *McDonnel Douglas* applies here as well. The first and second elements of this claim are not disputed. Rose engaged in statutorily protected conduct – her 1995 and 1999 EEOC actions and 1999 discrimination lawsuit – and she has suffered an adverse employment action – the defendants' refusal to hire her in 2004. The issue is whether there is any evidence that would enable a jury to reasonably conclude that Rose's protected conduct was a motivating factor in the defendants' decision not to hire her.

Rose primarily relies on Grayson's alleged statement that Rose was a "troublemaker" as proof that the defendants impermissibly retaliated against Rose for her prior protected conduct. However, the undisputed evidence indicates that the use of the word "troublemaker" by Grayson did not relate to Rose's previous claims against the defendants. To begin with, this statement was allegedly made by Grayson to Louis Parker after Parker had submitted Rose's application to Grayson. Parker's employment with the defendants was terminated in September 2002, so this statement would had to have been in relation to why the defendants did not hire Rose in 1999 rather than in 2004. Thus, the statement would carry much less probative value as to why Rose was not hired in 2004, which is the employment action currently in dispute.

The evidence also shows that in 1999 Grayson was unaware of Rose's 1995 EEOC claim –

Grayson was not involved with the claim, she did not have access to Rose's personnel file, nor was she told about the claim by anyone. Therefore, the "troublemaker" statement could not have been referring to any prior protected conduct, and therefore no retaliatory animus was possible. *See Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 715 (8th Cir. 2000) ("A plaintiff must show the employer had actual or constructive knowledge of the protected activity in order to establish a prima facie case of retaliation.").

Rose also relies on an alleged statement by Leroy Spoor, a union official and one of the four people responsible for reviewing resumes and applications, to show retaliatory animus. According to Parker, Spoor told Parker about a situation where Rose alleged that the company had discriminated against her when they brought back other laid-off employees with less seniority. Apparently, Spoor made this statement after Grayson had referred Parker to Spoor for more information about why the defendants had declined to hire Rose. However, Title VII does not require an employer to rehire the laid-off employees who have the most seniority. *See* 42 U.S.C. § 2000e-2. Even under the Age Discrimination in Employment Act, only discrimination based on age, not seniority, is actionable. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 608-09, 113 S. Ct. 1701, 1705, 123 L. Ed. 2d 338 (1993). Spoor's comments to Parker about Rose's seniority grievance, even if that grievance played a role in the decision not to hire Rose, do not give rise to a claim for retaliation under Title VII and are not relevant to this case.

Thus, Rose has failed to carry her burden to survive the defendants' motion for summary judgment. She has presented no evidence from 2004 that "directly reflect[s]" the alleged retaliatory animus on the part of anyone in the decision-making process that would allow a jury "to infer that that attitude was more likely than not a motivating factor in the [defendants' decision]." *Cronquist*,

237 F.3d at 925. Furthermore, once again presuming that Rose has presented a *prima facie* case of retaliation, the defendants' have met their burden by identifying three legitimate, non-discriminatory reasons for declining to hire Rose: (1) a recommendation against hiring Rose made by Rose's former coworkers, (2) Rose's lack of experience and training as an operator, and (3) an assessment of Rose's leadership potential. The burden then shifts back to Rose to demonstrate that these reasons are pretextual. Once again, the only evidence before the Court that these reasons could possibly be pretextual is Grayson's statement that Rose was a "troublemaker," a statement that was made in 1999, not in 2004, and could not have referred to Rose's prior protected conduct because Grayson did not know of that conduct when she made the statement. *Cf. Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1036 (8th Cir. 2005) ("[The plaintiff's] only possible evidence of pretext – that [the defendant] had discriminated against her in the distant past and (might have) failed to accommodate her in the recent past – are not close in time to the alleged adverse employment action, and are not related to the legitimacy of such action.").[1] Moreover, such evidence falls short of the heightened evidentiary burden imposed on Rose when she is alleging pretext rather than attempting to prove a *prima facie* case. *See Jones*, 461 F.3d at 992. Thus, the defendants are entitled to summary judgment on Rose's claim for retaliation.

## V.

Lastly, Rose alleges a claim of outrage against the defendants. In Arkansas,

---

[1] Although the intermittent time period between the two incidents of alleged discrimination was longer in *Henderson* than in the facts of the present case, that distinction is counterbalanced by the fact that the first incident in *Henderson* was not alleged discrimination, as it is here, but rather a claim of proven discrimination on which the plaintiff prevailed. Additionally, the *Henderson* court's reasoning applies equally to an elapsed time period of five years between the relevant incidents.

> There are four elements that are necessary to establish liability for the tort of outrage: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community;" (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 957, 69 S.W.3d 393, 403-04 (2002) (citing *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000); *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992)). Although Arkansas "has recognized a cause of action for the tort of outrage in an employment setting," for the most part Arkansas "has taken a very narrow view of claims of outrage." *Id*. at 957, 69 S.W.3d at 404. Arkansas also "requires clear-cut proof to establish the elements in outrage cases." *Allen v. Allison*, 356 Ark. 403, 416, 155 S.W.3d 682, 692 (2004).

As mentioned, in a motion for summary judgment, if the moving party carries its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Here, Rose has offered virtually no specific facts showing that there is a genuine issue for trial on her claim of outrage. Setting aside Grayson's alleged comment that Rose was a "troublemaker" – which the evidence indicates was in 1999 rather than 2004 – Rose has offered only bald assertions to support the latter three elements of this claim.

Rose has pointed to no evidence that could support a finding that the defendants' conduct was extreme and outrageous. The entirety of Rose's argument on this element consists of the following statement: "The question is whether, in our society, such behavior is 'extreme and outrageous' and the answer to that question should be an unequivocal 'yes'!" In order for Rose to prevail, the defendants' conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

civilized society." *Jones v. Clinton*, 990 F. Supp. 657, 677 (E.D. Ark. 1998) (quoting *M.B.M. Co. v. Counce*, 268 Ark. 269, 280, 596 S.W.2d 681, 687 (1980)). Declining to hire a former employee under these circumstances is not so extreme in degree as to go beyond all possible bounds of decency, "and merely describing conduct as outrageous does not make it so." *Id*.

Additionally, the Court has been presented with no evidence that the defendants' actions caused Rose's distress or that such distress is so severe that no reasonable person could be expected to endure it. In fact, there is no evidence before the Court to indicate that Rose has suffered any emotional distress at all. There is no genuine issue for trial, and summary judgment on Rose's claim of outrage is granted.

## CONCLUSION

Rose has failed to create a genuine issue for trial on her claims for racial discrimination, retaliation, and outrage, and therefore summary judgment in favor of the defendants is granted on all claims. Document #33.

IT IS SO ORDERED this 18th day of December, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE